ACCEPTED
03-14-00602-CR
4312718
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/27/2015 11:54:07 AM
JEFFREY D. KYLE
CLERK

**No. 03-14-00602-CR**

In the
Court of Appeals
Third District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

2/27/2015 11:54:07 AM

JEFFREY D. KYLE
Clerk

**The State of Texas,**
Appellant

v.

**Anthony James Sanchez,**
Appellee

Appeal from the 167th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-200502

**BRIEF FOR ANTHONY SANCHEZ**

**Fernando Cortes**
SBN: 04844580
 100 N. Santa Rosa, Suite 824
San Antonio, Texas 78207
(210) 381-0000
Fax: (210) 399-9444
Email: fcortes00@gmail.com

**Rocío Ramírez**
SBN: 24037328
1603 Babcock, Suite 159
San Antonio, Texas 78229
(210) 785-0443
Fax: (210) 785-0453
 Email: rocio@rocioramirezlaw.com

*Oral argument is requested*

# Identity of Parties and Counsel

Trial Judge: **P. DavidWahlberg**
167th Judicial District Court
P.O. Box 1748
Austin, Texas 78767

Defendant/Appellee: **Anthony James Sanchez**

Counsel for
Defendant/Appellee:

**Fernando Cortes**
100 N. Santa Rosa, Suite 824
San Antonio, Texas 78207

**Rocío Ramírez**
1603 Babcock, Suite 159
San Antonio, Texas 78229

Trial Counsel for State: **Aurora Perez**
Travis County District Attorney's Office
P.O. Box 1748
Austin, Texas 78767

Appellate Counsel for State: **Angie Creasy**
Travis County District Attorney's Office
P.O. Box 1748
Austin, Texas 78767

**Table of Contents**

Identity of Parties and Counsel ........................................................ i

Index of Authorities.....................................................................iii

Statement of the Case ...................................................................v

Statement of Facts ......................................................................1

Summary of Appellee's Argument.................................................. 3

Standard of Review...................................................................... 4

Argument.................................................................................... 4

    Point One: The evidence is inadmissible because the warrantless search was unconstitutional under the Fourth Amendment …................. 4

    Point Two: Tex. Transp. Code §§ 724.011 - .012 are not recognized exceptions to the Fourth Amendment warrant requirement..................... 7

    Point Three: The Federal exclusionary rule bars admission of the evidence …………………………………………………………………10

    Point Four: The Texas exclusionary rule bars admission of the evidence…………………………………………………………………17

Prayer .....................................................................................22

Certificate of Compliance and Service...........................................24

**Index of Authorities**
**Cases**

*Aliff v. State,* 627 S.W.2d 166 (Tex. Crim. App. 1982)…………………………13,14

*Amador v. State*, 221 S.W.3d 666 (Tex. Crim. App. 2007)…………..…………..4

*Aviles v. State,* 443 S.W.3d 291 (Tex. App.

 2014)…………………………………………………………...7,11, 12, 22

*Central Green Co. v. United States*, 531 U.S. 425 (2001)……….….………….21

*City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S. Ct. 447,

 148 L. Ed. 2d 333 (2000).............………………………………………..…9

*Cupp v. Murphy,* 412 U.S. 291 (1973)……………………………………………14

*Davis v. United States,* 564 U.S.__, 131 S. Ct. 2419, 180 L. Ed. 285 (2011)…….11

*Douds v. State,* 434 S.W.3d. 842…………………………………………………18

*Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)……………………………..10

*Howard v. State,* 617 S.W.2d 191 (Tex. Crim. App. 1979)………………………18

Humphrey's Executor v. United States, 295 U. S. 602 (1935)……………………21

*Illinois v. Krull*, 480 U.S. 340, 107 S. Ct. 1160, 94 L. Ed. 2d 364

 (1987)……………………………………………………………..18, 19,20

*Leal v. State,* No. 14-13-00208-CR, 2014 WL 5898299 (Tex. App. Nov. 13, 2014)………. …………………………………………………………...12

*McDonald v. United States*, 335 U.S. 451, 69 S. Ct. 191, 93 L. Ed. 153

 (1948)……………………………………………………………...17, 20

*Missouri v. McNeely*, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)

 ……………………………………………………...........3, 4,5, 6, 8, 9, 20, 22

*Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908

  (1966)………………………………………………………….5, 6, 8, 13, 14, 15,16,20

*State v. Adkins,* 433 N.J. Super. 479, 81 A.3d 680 (App. Div. Dec. 20, 2013)…11

*State v. Anderson,* 445 S.W.3d 895 (Tex. App. 2014)…………………………19

*State v. Garcia-Cantu*, 253 S.W.3d 236 (Tex. Crim. App. 2008)……………....4

*State v. Laird,* 38 S.W.3d 707…………………………………………….....13,15

*State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150

 (Tex. App. Jan. 23, 2014)……………………………………………………7,8,9

*State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178

 (Tex. Crim. App. Nov. 26, 2014)…………………………………………………19

*Sutherland v. State,* 436 S.W.3d 28 (Tex. App. 2014)…………………………12

*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)...........………5

*United States v. Robinson*, 414 U.S. 218, 94 S. Ct. 494, 38 L. Ed. 2d 427

 (1973)………………………………………………………………………4,5

*Winston v. Lee*, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985)…..……..5

*Weems v. State*, 434 S.W.3d 655 (Tex. App. 2014)……………….6,7, 8, 19, 20, 22

**Statutes**

Tex. Code Crim. Proc. art. 38.23 .................................................................10, 18, 22

Tex. Transp. Code § 724.011 ...........................................................................7, 8

Tex. Transp. Code § 724.012.............................................................................7. 8, 17

## Statement of the Case

Officer Moreno ordered a warrantless, blood draw of defendant, Anthony James Sanchez. The defendant did not consent to this search and no exigent circumstances were present. The trial court granted defendant's motion to suppress the results of the blood test because it violated defendant's Fourth Amendment rights.

**No. 03-14-00602-CR**

In the
Court of Appeals
Third District
Austin, Texas

---

**The State of Texas**,
Appellant

v.

**Anthony James Sanchez**,
Appellee

---

Appeal from the 167th Judicial District Court
Travis County, Texas
Cause Number D-1-DC-13-200502

---

### BRIEF FOR ANTHONY JAMES SANCHEZ

---

To the Honorable Third Court of Appeals:

Now comes Anthony James Sanchez and files this brief, and in support thereof respectfully shows the following:

### Statement of Facts

The defendant filed a motion to suppress the blood draw evidence, arguing that the blood draw was illegally seized without a warrant, consent, probable cause, or exigent circumstances. CR 58.

1

After a hearing, the trial court made the following findings of fact and conclusions of law:

Findings of Fact

1. The court finds Officer Melvin Moreno's testimony credible.

2. On January 26, 2013, Officer Moreno observed a vehicle "riding the white line". Moreno testified the right tires crossed into the next lane; the vehicle traveled 10-12 feet (the court takes judicial notice that the probable cause affidavit says 8-10 feet) and then returned to the lane of traffic. This happened only one time. There was no traffic in the adjoining lane although there were cars stopped at an intersection ahead. Moreno initiated stop and the vehicle eventually pulled into a parking lot and stopped. Moreno noticed an odor of alcohol and slurred speech. He began a DWI investigation but the defendant refused to perform field sobriety tests. Moreno noted additional signs of intoxication.

3. Officer Moreno arrested the defendant for driving while intoxicated.

4.  Officer Moreno read the DIC 24 (statutory warnings) to the defendant.

5. The defendant refused Officer Moreno's request to voluntarily submit to the taking of a blood specimen.

6. Officer Moreno received reliable information from a credible source that the defendant had been previously convicted, on two occasions, of driving while intoxicated.

7. Relying on Tex. Transp. Code §§ 724.011 and 724.012(b), Officer Moreno directed a phlebotomist at the Travis County Jail to take a blood sample from the defendant.

8.  Officer Moreno did not attempt to obtain a search warrant to draw blood.

Conclusions of law

9.  The propriety of the initial stop was not addressed at the hearing and that issue is reserved for future consideration.  Officer Moreno had probable cause to arrest the defendant.

10.  The blood draw complied with Tex. Transp. Code §§ 724.011 and 724.012(b).

11.  Officer Moreno acted in good faith when he relied on Tex. Transp. Code §§ 724.011 and 724.012(b) to draw blood.

12. The officer did not obtain a search warrant.

13. There WERE NOT exigent circumstances in this case.

14.  Because there was no warrant and no exigent circumstances, the blood draw in the defendant's case violated the Fourth Amendment to the U.S. Constitution.  *See Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

On the basis of the above findings and conclusions, the motion to suppress the blood draw evidence is GRANTED.

CR 69-70.

## Summary of Appellee's Argument

**Point One:** The evidence is inadmissible because the warrantless search was unconstitutional under the Fourth Amendment.

**Point Two:**  Tex. Transp. Code §§ 724.011 - .012 are not recognized exceptions to the Fourth Amendment warrant requirement.

**Points Three and Four:** The Federal and the Texas exclusionary rules bar admission of the evidence.

## Standard of Review

The appellate court reviews a ruling on a motion to suppress using a bifurcated system. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). The court should show "almost total deference" to the trial court decisions regarding historical facts. *Id.* The appellate court reviews de novo the application of law to those facts. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). If the trial court did not enter explicit findings of fact, the appellate court can infer facts that support the trial court's ruling, viewing these facts in the light most favorable to the trial court's ruling. *Id.*

## Argument

***Point One: The evidence is inadmissible because the warrantless search was unconstitutional under the Fourth Amendment.***

The Fourth Amendment establishes "the right of the people to be secure in their persons, houses, papers & effects, against unreasonable searches & seizures." The warrantless search violates Mr. Sanchez' Fourth Amendment rights. A warrantless search of a person is unreasonable unless it falls within a recognized exception. *United States v. Robinson*, 414 U.S. 218, 224 (1973). This is particularly true when the search is a compelled physical intrusion of the individual's body. *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). The Supreme Court has held that "wherever an individual may harbor a reasonable

expectation of privacy, he is entitled to be free from unreasonable governmental intrusion." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). A compelled blood draw involving a physical intrusion of a needle under a person's skin implicates the "most personal and deep-rooted expectations of privacy." *McNeely*, 133 S. Ct. at 1558 (*quoting Winston v. Lee*, 470 U.S. 753, 760 (1985)).

Exigent circumstances, where the need for the search is so compelling that it justifies the warrantless search, is a recognized exception. *Robinson*, 414 U.S. at 224. However, absent exigent circumstances, a search warrant is ordinarily required in order to draw blood without the individual's permission. *See Schmerber v. California*, 384 U.S. 757, 770 (1966)( "Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.").

The Supreme Court has held that even in cases where there is probable cause that the individual is driving under the influence, a warrant should be obtained before ordering a compulsory blood draw unless there are special circumstances. *See Schmerber* 384 U.S. at 771 (1966)( "That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions."); *see also McNeely*, 133 S. Ct. at

5

1561 (" In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.") In *Schmerber* the Supreme Court held that a warrantless search was justified because the defendant had to be transported to the hospital following an accident and therefore, there was not enough time for the police to obtain a warrant before the alcohol dissipated from Schmerber's blood stream. *Schmerber*, 384 U.S. at 770-71. The Supreme Court has consistently emphasized that a warrant should be obtained unless there are special circumstances that make it unreasonable for the police to obtain a warrant. *Id.* at 770; *McNeely*, 133 S. Ct. at 1561. The natural dissipation of alcohol from a person's blood stream alone does not make it unreasonable for the police to obtain a warrant. *See McNeely*, 133 S. Ct. at 1569 ("[A]lways dispensing with a warrant for a blood test when a driver is arrested for being under the influence of alcohol is inconsistent with the Fourth Amendment.").

In the present case the police did not have a warrant and there were no special circumstances that prevented the police from obtaining a warrant before conducting the blood draw. CR70. The search does not fall into a category of recognized exceptions to the Fourth Amendment warrant requirement. *See Weems v. State*, 434 S.W.3d 655, 665 (Tex. App. 2014). Therefore, the warrantless search violates Mr. Sanchez' Fourth Amendment rights.

***Point Two: Tex. Transp. Code §§ 724.011 - .012 are not recognized exceptions to the Fourth Amendment warrant requirement.***

Reliance on Tex. Transp. Code §724.011 and §724.012 to justify a warrantless blood draw is impermissible because these statutes are not recognized exceptions to the Fourth Amendment warrant requirement. *See e.g., Weems*, 434 S.W.3d at 665 ("[T]he United States Supreme Court has rejected any position that would treat section 724.012(b)(3)(B) as an exception to the Fourth Amendment"); *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App. Jan. 23, 2014) ("[T]he constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement.") *Aviles v. State,* 443 S.W.3d 291, 294 (Tex. App. 2014) ("these statutes clearly create categorical or per se rules the *McNeely* court held were not permissible exceptions to the Fourth Amendment's warrant requirement.").

**A per-se exigency rule is unconstitutional.**

Interpreting Tex. Transp. Code §724.011 and §724.012 to allow the police to conduct a mandatory blood draw without a warrant whenever there is probable cause necessitates relying on a per-se rule. *See Weems*, 434 S.W.3d at 665 ("Texas's implied consent and mandatory blood draw statutes clearly create such

categories or per se rules that the Supreme Court proscribed in McNeely."). A per-se exigency rule, which permits the police to conduct a warrantless search whenever the officer has probable cause that the individual is driving under the influence is unconstitutional. *McNeely*, 133 S. Ct. at 1554-55. The Supreme Court has emphasized that the totality of the circumstances must be considered in determining whether or not exigent circumstances exist to justify a warrantless search. *Schmerber*, 384 U.S. at 770-71; *McNeely*, 133 S. Ct. at 1560.

Tex. Transp. Code §724.011(a) implies consent to a blood test for anyone who "operat[es] a motor vehicle in a public place…while intoxicated". Tex. Transp. Code §724.012, mandates that an officer conduct a blood test in certain situations where the officer has probable cause that the individual is drinking under the influence. However, the statute does not authorize the police to obtain a blood sample of a suspected intoxicated driver without a warrant. *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App. Jan. 23, 2014) ("Although we agree that the statute required the officer to obtain a breath or blood sample, it did not require the officer to do so without first obtaining a warrant."); *see also Weems* 434 S.W.3d at 665. Despite the mandatory tone of these statutes, reading these statutes to authorize the police to conduct a blood test without first obtaining a warrant would be in violation of the Fourth Amendment. *See McNeely*, 133 S. Ct. at 1559 ("[w]e hold that in drunk-driving investigations, the natural dissipation of

alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.").

**A traditional balancing test does not permit a mandatory blood draw without a warrant absent exigent circumstances.**

A traditional balancing test weighing the needs of the State with the rights of the individuals also does not justify a per-se exigency rule. The state has an interest in preventing individuals from driving while intoxicated. *State v. Villarreal*, No. 13-13-00253-CR, 2014 WL 1257150, at *4 (Tex. App. Jan. 23, 2014). Preventing individuals from driving while intoxicated is an important public interest; however, "the gravity of the threat alone cannot be dispositive of questions concerning what means law enforcement officers may employ to pursue a given purpose." *City of Indianapolis v. Edmond*, 531 U.S. 32, 42 (2000). An individual has a very high expectation of privacy in his own body. The state's interest in preventing driving while intoxicated does not justify a broad rule of mandatory compelled physically intrusive searches of an individual's body. *McNeely,* 133 S.Ct. at 1565 ("the general importance of the government's interest in this area does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case").

***Point Three: The Texas exclusionary rules bar admission of the evidence.***

The Texas exclusionary rule codified in Tex. Code Crim. Proc. art. 38.23, states:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.
>
> (b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

The State insists that 38.23 should not exclude the blood draw because Mr. Sanchez's arrest was made on January 26, 2013, and the decision in *McNeely* was not made until April of that year. The State claims the blood draw was not conducted (thus the evidence was not obtained) in violation of the Fourth Amendment because the Supreme Court had not yet decided that warrantless draws were unconstitutional. The State says that "the defendant cannot backdate a change in law to exclude evidence". This is incorrect according to the Supreme Court. In *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) the Supreme Court held "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all

cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." According to U.S. Supreme Court, the new rule should be backdated and applied to the case at hand.

Despite this opinion, the Supreme Court has later clarified that "the retroactive application of a new rule of substantive Fourth Amendment law *raises* the question whether a suppression remedy applies; it does not answer that question." *Davis v. United States*, 131 S. Ct. 2419, 2431 (2011). Davis also held that "when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply" (Id at 2419). The State seeks to apply this standard to the case at hand, citing a New Jersey case, *State v. Adkins*, that uses *Davis* in order reverse the suppression of a warrantless blood test. The difference is that New Jersey had clear precedence that allowed for warrantless blood draws. The standard in *Davis* should not apply in Texas because we do not have the same precedent as the New Jersey police had in *Adkins*. In fact, the U.S. Supreme Court has expressly made this decision for us by remanding a drunk driving decision out of the San Antonio Appellate Court back to the lower courts to reevaluate the suppression of a warrantless blood draw in light of the new rule in McNeely. (*See* Aviles v. Texas, 134 S. Ct. 902 (2014) (remanding the decision to admit into evidence of a mandatory blood draw back to the lower court

to be reconsidered in light of *McNeely*). The State insists that this court should rule contrary to obvious Supreme Court will. The current court should follow the example explicitly set by the United States Supreme Court, as they have clearly expressed through the remanding of a contrary Texas decision, that courts should now follow the interpretation set forth in *McNeely*.

Furthermore, since the *McNeely* holding, Texas appellate courts have reversed trial court decisions made before the holding that denied suppression of these warrantless blood tests. (Aviles v. State, 443 S.W.3d 291, 292 (Tex. App. 2014)("After reviewing the denial of the motion to suppress in light of *McNeely,* we reverse the trial court's judgment and remand the matter to the trial court for a new trial.", *See* Sutherland v. State, 436 S.W.3d 28, 38 (Tex. App. 2014) (reversing the trial court's denial of a blood test suppression in a drunk driving case stating that "[it] remains clear from *McNeely* that the dissipation of alcohol alone will not necessarily be exigent circumstances, that some other "special facts" must lend themselves to the exigency of the situation", *see also Leal v. State*, No. 14-13-00208-CR, 2014 WL 5898299, at *5 (Tex. App. Nov. 13, 2014) (reversing a case that was decided two months before McNeely, and suppressing the warrantless blood draw stating "the State has not shown or articulated any facts supporting the existence of an exigency beyond the passage of time and the resulting dissipation of alcohol in the bloodstream"). Despite this trend of Texas

12

appellate courts applying *McNeely* to drunk driving convictions that have since come up on appeal, the State asks us to do the opposite and reverse a trial court decision that is in line with the Supreme Court authority. Denying the suppression on appeal would clearly go against this established trend that is in line with the Supreme Court's actions.

To entertain the State's argument that *McNeely* is not authoritative to this decision, the blood draw was still not done in compliance with the law according to Constitutional precedent. The State insists that Texas case law before McNeely "clearly held that alcohol dissipation alone constituted exigent circumstances in DWI cases". This assertion is untrue. The State references two cases to justify this assertion, *Aliff v. State*, 627 S.W.2d 166, and *State v. Laird*, 38 S.W.3d 707, neither of which contain facts that apply to the case at hand. Furthermore, U.S. Supreme Court decisions are binding to Texas court decisions, and before *McNeely*, *Schmerber v. California* was the reigning authority, holding that exigency could justify a warrantless blood draw only in certain situations. *Schmerber* expressly states that this exigency is dependent on **all of the circumstances** and should not be used to justify the sweeping use of warrantless blood tests.

In *Aliff*, the driver had collided with another car after running a red light while being pursued by an officer "at speeds in excess of 100 miles per hour". The victim was killed and the blood was drawn from the driver while in the hospital.

13

The *Aliff* decision was not made in consideration of the constitutionality of a warrantless involuntary blood draw of an arrestee because the driver in Aliff was not under arrest when the blood was taken. At the time of *Aliff*, there was a statute that required that consent for a blood draw of arrested drivers be given only by those arrested. *Aliff* deliberately dodges the issue of consent on the grounds that the driver was not under arrest when the draw was made. (*Aliff v. State*, 627 S.W.2d 166, 168, 169 ("the statute has enlarged upon what is constitutionally required. The statute requires that consent be obtained from those individuals under arrest. However the statute has been construed to apply only to those persons under arrest, it does not apply to persons not under arrest") Furthermore, the court in *Aliff* does not apply the Supreme Court precedent found in Scherburg because the driver in Schmerburg was under arrest and the driver in Aliff was not. Since the court in *Aliff* uses the fact that the driver was not under arrest in order to distinguish it and justify its admission of the blood draw, it would be improper to look to that decision as precedence in our case because the Appellee was under arrest when the blood was drawn. Instead, the court in *Aliff* admits the blood draw based on a decision in which the court admitted fingernail scrapings collected despite the objections of a murder suspect not yet under arrest. *See Cupp v. Murphy,* 412 U.S. 291 (1973). In that case, as in *Aliff*, the evidence was obtained involuntarily pursuant to homicide investigations. These are much more dire situations than the

case at hand, and should not be the guideline for all cases involving involuntary blood draws because the issue of exigency is determined in part by the seriousness of the circumstances and the government's interest in prosecution.

The State also cites *State v. Laird* to assert Texas law clearly permitted the drawing of Sanchez's blood without consent or a warrant on January of 2013. Laird is inapplicable to the case at hand because the issue decided by the court was whether suppression of evidence was proper when the blood was drawn by a paramedic. Laird dealt with statutory interpretation regarding this issue and merely mentioned the constitutionality of drawing blood to test for intoxication level. (*See* State v. Laird, 38 S.W.3d 707 (Tex.App.--Austin 2000). The State cites a quotation from Laird that says "[i]t is a well settled fact that" the nature of alcohol dissipation constitutes exigency for Fourth Amendment purposes. It is curious that the State does not cite the *Laird* court's source for this statement, which is the Supreme Court case *Schmerber v. California*.

Before the *McNeely* case, The *Schmerber* case was the reigning Supreme Court authority on the subject of the constitutionality of warrantless blood draws in drunk driving cases. In *Schmerber,* the driver was in a car accident and taken to the hospital while under arrest. In the hospital, the police had a blood sample drawn and tested for alcohol despite the driver's objections and without a search warrant. The Supreme Court held that this did not violate the Fourth Amendment. However,

at the end of the opinion they expressly state that this holding only applies to the specific facts at hand, and reaffirms the value placed on the privacy of one's body. *Schmerber v. California*, 384 U.S. 757, 772 (1966) ("It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.") The Supreme Court reasoned in *Schmerber* that the dissipation of alcohol from the blood created exigency under these circumstances in which "time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." (Id at 771). These factors are missing in the case at hand and this exigency should not be applied because there was no emergency creating the exigency required to skip the warrant requirement.

Of the two cases cited by the State to argue that Texas law considered alcohol level to be an exigent circumstance that allowed for warrantless blood draws, one of them does not even base it's decision off of drunk driving precedence, and the other only vaguely mentions the issue of constitutionality, which it bases off of *Schmerber*. Both cases contained facts completely different from the case at hand, and in both cases, the defendants were being investigated for

homicide which adds to exigency. Appellee did not commit homicide or cause a car accident. There was no reason why a warrant could not have been obtained for the Appellee. At the time of the Appellee's arrest, *Schmerber* was the reigning precedent for the constitutionality of warrantless blood draws. *Schmerber* held that alcohol dissipation may cause exigency in particular situations such as a state of emergency. It did not hold that the nature of alcohol dissipation was sufficient to grant the police authority to compel warrantless blood draws of all those arrested for driving under the influence. The authoritative case law at the time of Appellee's arrest did not allow for his blood to be drawn without a warrant because the exigency present in *Schmerber* did not exist in the case at hand.

***Point Four: The Federal exclusionary rule bars admission of the evidence.***

The State argues that the good faith exception to the "exclusionary rule" should apply to this case because the officer relied on the mandatory blood draw statute in Section 724.012(b)(3)(B). The exclusionary rule operates to exclude from admission in a trial all evidence determined to be the product of an unconstitutional search or seizure. Any evidence that is obtained as a result of an unlawful search is excluded in order to maintain the constitutional safeguard of the Fourth Amendment against unreasonable search and seizures. *See McDonald v. United States*, 335 U.S. 451, 453 (1948) (professing the exclusionary rule as a safeguard to The Fourth Amendment rights). There are some recognized

exceptions to the exclusionary rules established by the Federal courts. In *Illinois v. Krull*, 480 U.S. 340, 350 (1987), the Supreme Court held that evidence should not be excluded if the officer relies in good faith on a statute and enforces the statute as written. In Texas, by contrast, the exclusionary rule is statutory and its sole exception is explicitly indicated by the statute. Exceptions applied to the federal exclusionary rule are only applied to the Texas statute "if they are consistent with the plain language of the statute". *Douds v. State,* 434 S.W.3d. 842, 861 (Tex.App. 2014). Article 38.23 of the Texas Code of Criminal Procedure only provides an exception for a law enforcement officer who relies in objective good faith upon a warrant issued by a neutral magistrate based on probable cause. The statute does not say anything about an officer's good faith reliance on the statute. The good-faith exception does not apply to the instant case because there was no warrant issued. The Court of Criminal Appeals has refused to adopt federal exceptions inconsistent with the text of the Texas statutory exclusionary rule and has rejected an effort to broaden the good-faith exception using federal precedent. *See Howard v. State,* 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (holding "evidence seized incident to an arrest under an unconstitutional law is excludable under Texas law"); *Douds v. State,* 434 S.W.3d. 842, 861 (Tex.App. 2014) (concluding that the express exception stated in the Texas exclusionary rule statute is clear enough to

reject any other good faith exceptions to the rule that do not follow the text of the statute).

**The police did not act in good faith reliance on the Texas Transportation Code when they neglected to obtain a warrant before drawing blood:**

Furthermore, Tex. Transp. Code §724.011 and §725.012 as written does not authorize the police officer to conduct a warrantless blood draw. *See State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at \*10 (Tex. Crim. App. Nov. 26, 2014) (reasoning that the repeat offender provision of the mandatory blood draw statute did not provide a way around getting a warrant). Otherwise these statutes would be in clear violation of the warrant requirement of the Fourth Amendment and a statute cannot reasonably be relied on if the "legislature wholly abandoned its responsibility to enact constitutional laws". *Weems,* 434 S.W.3d at 666 (citing *Krull*, 480 U.S. at 355).

The State admits in its brief that the Texas Court of Criminal Appeals held that the mandatory blood draw statute is not an exception to the warrant requirement. *See State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178, at \*10 (Tex. Crim. App. Nov. 26, 2014) (sustaining the argument that the 724.012(b) exceptions do not allow police to avoid obtaining a warrant without other circumstances that make it difficult for the officer to obtain one in time); *State v. Anderson,* 445 S.W.3d 895, 907 (Tex. App. 2014) ("There is no language in

section 724.012(b) that authorizes a police officer to take the specimen without a warrant. Furthermore, there is no indication in the plain language of the statute that the circumstances outlined in section 724.012(b) would constitute 'exigent circumstances' or any other recognized exception."). Since the officer drew the blood without a warrant, he was not acting pursuant to the cited statute as interpreted by the court.

Additionally, an officer does not act in good faith if the provisions of the statute "are such that a reasonable officer should have known that the statute was unconstitutional." *Weems,* 434 S.W.3d at 666 (citing *Krull*, 480 U.S. at 355). Peace officers have more legal training than the average citizen and are familiar with the requirement that one's blood cannot be drawn without a warrant or a bona fide exigency. The Supreme Court has consistently held that obtaining a warrant before conducting a blood draw should be the ordinary procedure and a warrantless blood draw should only be conducted in emergency situations. *See e.g., McDonald*, 335 U.S. at 456; *Schmerber,* 384 U.S. at 770; *McNeely,* 133 S.Ct. at 1555.

**The police did not act in good faith reliance on binding appellate precedent when they neglected to obtain a warrant before drawing blood:**

The good faith exception to the exclusionary rule mentioned in *Davis* applies when evidence is gathered pursuant to "binding appellate precedent". The state again relies on *Aliff* and *Laird* to assert that the police relied on *binding* appellate

20

case law that held that alcohol dissipation alone gave rise to exigent circumstances in DWI cases. The Supreme Court has long clarified that it is the *holding* of a case that is binding, things merely mentioned by the court as dicta may be considered, but are not binding, "dicta may be followed if sufficiently persuasive but are not binding". *Central Green Co. v. United States*, 531 U.S. 425, 431 (2001) (quoting Humphrey's Executor v. United States, 295 U. S. 602, 627 (1935)). The cited cases were not binding in this situation because neither of them dealt with the constitutionality of warrantless blood draws pursuant to DWI arrests. The dicta cited by the State in these two cases is derived from *Schmerber*, in which the U.S. Supreme Court considers the circumstances as a whole to determine exigency. The police did not rely on binding appellate precedence in neglecting the warrant requirement because clear precedence did not exist for the exact situation at hand, and the cases cited by the state were not binding.

It is true, as the State says, that "Texas's police officers, prosecutors, defense attorneys, and judges have had mandatory blood draw cases for years without questioning their constitutionality". The Appellant, however does not question the constitutionality of requiring mandatory blood draws, instead the Appellant's case repeats the binding precedence seen in *Schmerber* and *McNeely* that doing so without a warrant is a violation of the constitution unless the circumstances as a whole limit the officer's ability to obtain a warrant in time. Many counties have

been obtaining warrants in every DWI arrest as a matter of procedure, even before the McNeely decision. The State does not assert that a magistrate was not available, or that the police could not obtained a warrant in a timely fashion before drawing blood.

The warrantless blood draw violated Mr. Sanchez's Fourth Amendment rights. *See McNeely*, 133 S. Ct. at 1554-55. The blood draw was conducted without a warrant and does not fit into any of the recognized exceptions. Tex. Transp. Code §724.011 and §724.012 are not recognized exceptions to the Fourth Amendment warrant requirement. *See Weems*, 434 S.W.3d at 665. Therefore, the blood draw was an unlawful search that violated the Fourth Amendment of the Constitution. *See McNeely*, 133 S. Ct. at 1554-55; *Weems*, 434 S.W.3d at 665; *Aviles,* 443 S.W.3d at 294. Any evidence obtained as a result of that search should be suppressed according to the Texas exclusionary rule. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West).

**Prayer**

For the reasons stated above Anthony James Sanchez asks this Court to sustain the trial court's order suppressing the results of the blood analysis.

22

Respectfully submitted,


/S/ *Fernando Cortes*

Fernando Cortes
SBN: 04844580
100 N. Santa Rosa, Suite 824
San Antonio, Texas 78207
(210) 381-0000
Fax: (210) 399-9444
Email: fcortes00@gmail.com




/S/ *Rocío Ramírez*

Rocío Ramírez
SBN: 24037328
1603 Babcock, Suite 159
San Antonio, Texas 78229
(210) 785-0443
Fax: (210) 785-0453
Email: rocio@rocioramirezlaw.com

## Certificate of Compliance and Service

I hereby certify that this brief contains 6,065 words, based upon the computer program used to generate this brief and excluding words contained in those parts of the brief that Texas Rule of Appellate Procedure 9.4(i) exempts from inclusion in the word count, and that this brief is printed in a conventional, 14-point typeface.

I further certify that, on the 26th day of February, 2015, a true and correct copy of this brief was served, by U.S. mail, electronic mail, facsimile, or electronically through the electronic filing manager, to the Appellant's attorneys, Angie Creasy, Assistant District Attorney, P.O. Box 1748, Austin, Texas 78767, fax: (512) 854-4810, email:Angie.Creasy@traviscountytx.gov.

/S/ *Rocío Ramírez*
Rocío Ramírez